**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. DAVID NORINGTON, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 10 C 0668 |
| DONALD GAETZ, Warden, | ) ) | The Honorable Sharon Johnson Coleman, |
| Respondent. | ) ) ) | Judge Presiding. |

**MEMORANDUM OPINION AND ORDER**

Before the Court is petitioner David Norington's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the reasons that follow, Norington's petition is denied.

**I.  Background**

Norington does not present clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's opinion, and thus the Court presumes those facts are correct for purposes of its habeas review. See 28 U.S.C. § 2254(e)(1); Rever v. Acevedo, 590 F.3d 533, 537 (7th Cir. 2010). The Court therefore adopts the underlying facts as set forth by the Illinois Appellate Court in People v. Norington, Nos. 1-04-3439 & 1-05-1586 (Ill.App.Ct. 2006) (cons.) (unpublished).

On April 10, 2002, a grand jury indicted David Norington on a charge of first degree murder for the death of Ollie Hale. The indictment included language indicating that the State would seek an extended term sentence on the ground that Norington committed the murder in an

exceptionally brutal and heinous manner indicative of wanton cruelty.

On May 2, 2002, Norington appeared in the Circuit Court of Cook County represented by an Assistant Public Defender. Norington stated in open court that he wanted a "plea bargain." The court explained that a plea would be inappropriate until after the Assistant Public Defender had a chance to review the case. The Assistant State's Attorney stated that he told the Assistant Public Defender that the state would not agree to a reduction of the charge to second degree murder. When asked by the court if he understood that a plea to second degree murder would not be accepted by the State, Norington stated in open court, "ok, but if there is something close that I can cop-out to then that's what I want. I don't want to waste nobody's time. I don't want to be here and keep going on and on, you know what I'm saying, waste your time, your Honor, and waste my time at the same time. I am not running away from nothing." The court told Norington that he could have a plea conference after his attorney reviewed discovery.

On May 14, 2002, the Assistant Public Defender informed the court that he had received the discovery materials tendered by the State. Norington expressed impatience at not being able to enter a plea, stating "I wanted it taken care of today."

On May 17, 2002, Norington again appeared in court and requested a plea conference. After the conference, the Assistant Public Defender stated that Norington understood the results of the conference. The judge informed Norington that pursuant to the results of the conference, in exchange for a guilty plea, the court was prepared to impose a 33-year prison term. The State requested that Norington be evaluated for fitness prior to entry of the plea agreement. Norington stated that he wanted to "take" the plea deal and to "forget" the psychiatric evaluation. When the trial court insisted on ordering the evaluation, Norington asked whether the results of the

evaluation might change the sentence imposed. The court said that the sentence would probably not change, but that constitutional concerns compelled the court to order the evaluation.

On June 20, 2002, the court reconvened to hold the fitness hearing. Dr. Stafford Henry testified that Norington was prescribed medications to control his impulsivity and mood vacillation, but that he was fit to stand trial and assist with his defense while on medication. Following the fitness hearing, the Assistant Public Defender informed the trial court that Norington wanted to enter a plea of guilty to first degree murder. The Assistant Public Defender then stated in open court, "I would like to state for the record it's against the advice of counsel. But Mr. Norington insisted that's what he wishes to do, so he is entering a plea of guilty." The Assistant Public Defender informed the trial court that he had advised his client of his rights. Norington stated in open court that these representations were true.

The court then read the charge, admonished him of the trial rights he was giving up, and admonished him of the range of punishment that could be imposed for such a charge. The trial court then asked Norington if he understood that he was pleading guilty and if he understood the rights that he was giving up. Norington answered that he understood. The court then asked Norington if anybody had forced him to plead guilty and he responded "no." The court asked if he was pleading guilty of his own free will and Norington said "yes."

The court then asked the State to provide a factual basis. The following information was presented to the court as the factual basis. On March 28, 2002, Norington shared a residence with Ollie Hale at 1842 South Drake in Chicago, Illinois. Late that evening, Norington and Hale got into an argument over food. Norington accused Hale of eating more than his share of chicken nuggets. The argument escalated and Norington picked up a large ashtray and struck

Hale several times in the head, breaking the ashtray. Norington then dragged Hale's unconscious body into the kitchen where he struck Hale multiple times in the head and torso with a claw hammer. If called to testify, the medical examiner would attest that Hale died of blunt trauma to the head. Norington called 9-1-1 from a pay phone and returned to the house where he turned himself in to police and directed them to the location of Hale's body in the kitchen. Norington gave a handwritten statement to a Chicago Police Detective and an Assistant State's Attorney, admitting to the murder. The court then asked again if Norington wanted to plead guilty, and he said "yes."

In mitigation, the Assistant Public Defender told the trial court that Norington had never attempted to conceal the crime. In fact, Norington called the police, waited for them to arrive, immediately told them that he had committed the murder, and directed the police to the decedent's body.

The trial court accepted the plea and sentenced Norington to 33 years imprisonment at 100 %. The court then advised Norington of his rights to appeal, including the following:

> "THE COURT: Mr. Norington, you have the right to appeal this guilty plea if you see fit. What you'd have to do within 30 days is file a written document, stating the reasons why you believe your constitutional and statutory right were violated by this plea of guilty.
>
> If I agreed with you, I would vacate the plea of guilty and set your case down for trial. If I disagreed that your rights were violated by this plea of guilty, what I would do is determine whether you can afford an attorney; and if you could not afford an attorney one would be appointed free of charge along with all

>    the other costs of your appeal. Do you understand that?
>
>    DEFENDANT: Yeah."

The trial court failed to inform Norington that he also had a right to court-appointed counsel in the preparation of a post-plea motion to vacate.

On July 17, 2002, Norington filed a *pro se* "motion to reduce sentence." The trial court appointed Norington's trial counsel for purposes of the motion. The Assistant Public Defender neither amended the motion nor did he file the Illinois Supreme Court Rule 604 compliance certificate. During the hearing on the motion, Norington's attorney stated that he had reviewed the motion, discussed it with his client, and then argued the substance of the motion that Norington believed the court had not given sufficient weight to the mitigating factors and had imposed an unduly harsh sentence. Counsel also stated that Norington wrote a note immediately after the incident, expressing his remorse. He then reiterated that Norington had cooperated with the police and admitted his involvement. The State then reminded the trial court of Norington's previous homicide conviction. The trial court denied the motion. Norington did not file a notice of appeal from this order.

On November 6, 2002, Norington filed a timely *pro se* post-conviction petition. Norington alleged that he was improperly induced to plead guilty by his attorney, who purportedly told him that he would "in fact" receive the maximum sentence of 100 years if he chose to go to trial. Norington asserted that he filed the motion to reduce sentence by mistake because he was given faulty advice by the prison's legal assistance program. The petition admitted that the trial court had advised him that he had the right to withdraw his plea within 30 days if he provided a written motion with the proper grounds. Norington also alleged that he had

tried to contact the Assistant Public Defender, but was unable to reach him due to the strict policy at the prison limiting communication.

The petition was supported by affidavit. In his affidavit, Norington stated that he had tried to contact his trial counsel after he was remanded to the custody of the Illinois Department of Corrections. The affidavit further averred that he had told his attorney that the following the incident he had ingested an entire bottle of his medication, rendering him incoherent. Norington further claimed that he told his attorney that he could not recall committing the crime or confessing to the police. He stated that he told his attorney that he wanted to change the statement he made to police because it was not true. The Assistant Public Defender purportedly told him that the proper course of action would be to litigate a pre-trial motion about the voluntariness of the statement. The affidavit further claimed that he would not assist Norington unless he pled guilty.

The trial court summarily dismissed the post-conviction petition in a written order issued January 2, 2003. The trial court found the petition to be frivolous and patently without merit.

On January 31, 2003, Norington filed a motion to reconsider the summary dismissal, which the court denied. On February 24, 2003, Norington filed a timely notice of appeal. For reasons that are unclear, the trial court mistakenly treated the notice of appeal as a second motion to reconsider. The trial court entered an order on March 18, 2003, denying the "motion to reconsider the motion to reconsider."

On January 14, 2004, Norington filed a successive *pro se* post-conviction petition. The second petition again alleged that he was improperly induced by his appointed attorney to enter the guilty plea. He also argued that because his post-plea motion to reduce sentence implicitly

impugned the quality of his attorney's representation, representation by the same attorney at the hearing on that motion created a conflict of interest. Norington argued that was another instance of ineffective assistance of counsel. On March 25, 2004, the trial court summarily dismissed the successive *pro se* post-conviction petition as frivolous and without merit. The trial court also stated that it was barred by *res judicata*. Norington filed a timely notice of appeal.

During the appeal from the dismissal of Norington's successive post-conviction petition, his court appointed appellate counsel noted that the trial court had mischaracterized the notice of appeal from Norington's first *pro se* post-conviction petition. Consequently, on March 11, 2005, the circuit court processed Norington's first notice of appeal. The Illinois Appellate Court subsequently consolidated the two appeals arising from the post-conviction petitions.

The Illinois Appellate Court affirmed the summary dismissal of Norington's first *pro se* post-conviction petition, finding that the record refuted the Norington's claims. The appellate court found that Norington had repeatedly sought to plead guilty and that his attorney stated on the record that Norington was pleading guilty against advice of counsel. The appellate court also found that Norington's plea was made willingly, knowingly, and voluntarily. Thus, Norington had not asserted any basis for appealing from his guilty plea. Accordingly, his counsel was not ineffective for failing to perfect such an appeal nor could the guilty plea have been coerced.

The appellate court also affirmed the dismissal of Norington's successive *pro se* post-conviction petition, finding that the appellate court's rulings on the first post-conviction petition have a *res judicata* effect on the all claims that could have been raised in the first petition. The appellate court found that any newly raised issues, such as new allegations of ineffective assistance of counsel and purported deficiencies in the trial court's post-plea admonishments,

were forfeited.

Norington filed a Petition for Leave to Appeal (PLA) in the Illinois Supreme Court, arguing that the Illinois Appellate Court misapplied the law in its rejection of Norington's claim that his appointed counsel was ineffective for failing to perfect his appeal. See Petition for Leave to Appeal, People v. Norington, No. 103723. The Illinois Supreme Court denied Norington's PLA on September 30, 2009.

## II.     Habeas Petition

On February 1, 2010, David Norington filed the present *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). This court construes *pro se* allegations liberally. See McGee v. Bartow, 593 F. 3d 556, 565-66 (7th Cir. 2010). Thus, Norington's habeas claims include: (1) trial counsel was ineffective for inducing him to plead guilty; (2) trial counsel was ineffective for failing to file a motion to withdraw the guilty plea; (3) trial counsel was ineffective for failing to amend Norington's motion to reduce sentence to include withdrawal of the guilty plea; (4) the state court improperly dismissed Norington's first post-conviction petition at the first stage; and (5) the trial court improperly admonished him pursuant to Illinois Supreme Court Rule 605(c).

## III.    Legal Standard

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), this court must deny a petition for a writ of habeas corpus with respect to any claim adjudicated on the merits by the state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "[U]nder post-AEDPA

habeas law, we defer to a great extent to the decisions of the state courts, and review these decisions for reasonableness only." Badelle v. Correll, 452 F. 3d 648, 654 (7th Cir. 2006). A state court unreasonably applies Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of a particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407; see also Bynum v. Lemmon, 560 F.3d 678, 683 (7th Cir. 2009). For a state court decision to be considered unreasonable under this standard, it must lie "well outside the boundaries of permissible differences of opinion. Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002).

A federal court reviewing a habeas petition should examine the decision of the last state court to rule on the merits of the issue. Cossel v. Miller, 229 F. 3d 649, 654 (7th Cir. 2000). Accordingly, we review the Illinois Appellate Court opinion on Norington's consolidated post-conviction petitions.

**III.    Discussion**

Norington claims that his appointed Assistant Public Defender improperly induced him to plead guilty to first degree murder by advising him that he would "in fact" receive the maximum 100 year prison sentence if he went to trial. Courts review claims of ineffective assistance of counsel using the two-part analysis articulated in Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under the Strickland analysis, Norington must demonstrate that his counsel's performance fell below an objective standard of reasonableness and caused him prejudice in that "but for counsel's unprofessional errors, the result of the

proceeding would have been different." Id. In the context of a guilty plea, on the issue of prejudice, Norington must show there is a reasonable probability that, but for counsel's errors, he "would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed 2d 203 (1995). "A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984); Tezak v. United States of America, 256 F. 3d 702, 712 (7th Cir. 2001).

In its opinion, the Illinois Appellate Court did not refer expressly to the two-pronged analysis of Strickland. However, the reasoning that the appellate court applied was consistent with federal law and, therefore, its failure to cite Strickland is of no import. See Early v. Packer, 537 U.S. 3, 8 (2002)(per curiam). Here, the appellate court found that Norington's claim that his appointed trial counsel was ineffective for inducing him to plead guilty was refuted by the record. The Illinois court found that the record demonstrated that from the moment Norington appeared before the trial court he expressed his desire to plead guilty. Indeed, the appellate court pointed out that Norington's counsel stated on the record that Norington was pleading guilty against the advice of counsel. The appellate court concluded that the record established that Norington's plea was entered knowingly, intelligently, and voluntarily. There was no evidence in the record that counsel's performance was deficient. The record indicates that Norington stated numerous times in open court that he wanted to plead guilty and never expressed a desire to go to trial. Accordingly, Norington cannot show prejudice under Strickland. The state court's decision that the record refuted this claim was reasonable.

Turning to Norington's claim that his appointed counsel was ineffective for failing to withdraw his guilty plea or amend his motion to reduce sentence to include a withdrawal of the guilty plea, this court finds Norington's claim unavailing. Once again, this court applies the Strickland standard of ineffective assistance of counsel to determine whether the state court's decision was consistent with federal precedent.

Norington claims in the present petition that when he asked his appointed counsel to file a motion to withdraw his guilty plea, his attorney refused. This claim is a notable departure from his claim in his first *pro se* post-conviction petition, in which he claimed that he was unable to communicate at all with his appointed counsel and thus was unable to file a proper withdrawal of plea. In the instant habeas petition, Norington also claims that his attorney "scared" him out of withdrawing his plea by stating that he would "in fact" receive a sentence of 100 years in prison. Norington further claims that his *pro se* motion to reduce sentence was a mistake and that he intended to file a motion to withdraw his guilty plea. In effect, Norington is claiming that his attorney's ineffective assistance prevented him from appealing. See Illinois Supreme Court Rule 604(d)(defendant must file a timely motion to withdraw the plea before he or she may appeal). The Illinois Appellate Court rejected this claim opining that, according to the Illinois Supreme Court Rules, Norington would have had to demonstrate that his guilty plea was involuntary in order to appeal, and since he would be unable to make such a demonstration because the record clearly established that his plea was voluntary, his claim lacked merit.

In Roe v. Flores-Ortega, the Supreme Court applied the Strickland analysis on the issue of ineffective assistance of counsel for failure to perfect an appeal. 528 U.S. 470, 476-77 (2000). In that case, the Supreme Court stated that to satisfy the first prong of Strickland, that counsel's

Turning to Norington's claim that his appointed counsel was ineffective for failing to withdraw his guilty plea or amend his motion to reduce sentence to include a withdrawal of the guilty plea, this court finds Norington's claim unavailing. Once again, this court applies the Strickland standard of ineffective assistance of counsel to determine whether the state court's decision was consistent with federal precedent.

Norington claims in the present petition that when he asked his appointed counsel to file a motion to withdraw his guilty plea, his attorney refused. This claim is a notable departure from his claim in his first *pro se* post-conviction petition, in which he claimed that he was unable to communicate at all with his appointed counsel and thus was unable to file a proper withdrawal of plea. In the instant habeas petition, Norington also claims that his attorney "scared" him out of withdrawing his plea by stating that he would "in fact" receive a sentence of 100 years in prison. Norington further claims that his *pro se* motion to reduce sentence was a mistake and that he intended to file a motion to withdraw his guilty plea. In effect, Norington is claiming that his attorney's ineffective assistance prevented him from appealing. See Illinois Supreme Court Rule 604(d)(defendant must file a timely motion to withdraw the plea before he or she may appeal). The Illinois Appellate Court rejected this claim opining that, according to the Illinois Supreme Court Rules, Norington would have had to demonstrate that his guilty plea was involuntary in order to appeal, and since he would be unable to make such a demonstration because the record clearly established that his plea was voluntary, his claim lacked merit.

In Roe v. Flores-Ortega, the Supreme Court applied the Strickland analysis on the issue of ineffective assistance of counsel for failure to perfect an appeal. 528 U.S. 470, 476-77 (2000). In that case, the Supreme Court stated that to satisfy the first prong of Strickland, that counsel's

performance was deficient, the petitioner must show that his counsel failed to consult with him about appealing, and that failure resulted in a deficient performance because either: (1) a rational defendant would want to appeal, or (2) that this particular petitioner reasonably demonstrated to counsel that he was interested in appealing. Id. at 479-80.

Here, the state court was inaccurate in its analysis since it emphasized that Norington failed to identify any ground on which an appeal from his guilty plea could be made, rather than on whether Norington expressed his intention or desire to appeal. See Flores-Ortega, 528 U.S. at 479-80; Bednarski v. United States, 481 F. 3d 539, 536 (7 th Cir. 2007). Nevertheless, Norington's claim still must fail because he cannot demonstrate in light of the record that any rational defendant would want to appeal or that he demonstrated to counsel his desire to appeal. Norington suggests that his mistakenly filed motion to reduce sentence should have indicated to his attorney that he wanted to appeal. The record does not support such a suggestion since at no time, even during the hearing on his motion to reduce sentence, did Norington express a desire to withdraw his plea. He interjected during the hearing after his attorney argued the motion on his behalf seeking a reduction of sentence based on further consideration of mitigating factors, and still made not statement to the court or counsel that he wanted to withdraw his plea or go to trial.

Yet, even if this court concludes that Norington met the first prong of Strickland and found that his attorney's performance was deficient, Norington's claim would still fail because he cannot show prejudice. In Flores-Ortega, the Supreme Court stated that to satisfy the prejudice prong of Strickland, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega, 528 U.S. at 484. The Supreme Court explained that a

determination of prejudice is a factual inquiry, but evidence of a nonfrivolous ground for appeal will often be highly relevant, though an inability to demonstrate the merit of an appeal would not foreclose the possibility of satisfying the prejudice prong "where there are other substantial reasons to believe that he would have appealed." Id.

In this case, Norington has not proffered any nonfrivolous grounds for appeal. He also fails to articulate any substantial reasons to believe he would have appealed. The record clearly establishes that Norington's plea was voluntary and contrary to advice of counsel. Norington's focus, as expressed in his motion to reduce his sentence and at the hearing on that motion, was that he believed the sentence imposed was too harsh in light of certain mitigating factors. Accordingly, Norington does not satisfy either prong of the Strickland test, and the state court's decision was not unreasonable.

Norington's remaining claims in the instant petition are not cognizable in federal habeas proceedings because they are based on claims of error in the application of state law. Norington claims that his *pro se* post-conviction petition was improperly dismissed at the first-stage through the application of second-stage standards. Norington also argues that the trial court did not properly admonish him pursuant to Illinois Supreme Court Rule 605(c).

A federal court may not grant habeas relief except for violations of the United States Constitution and the laws or treaties of the United States. 28 U.S.C. §2241(c)(3). Federal habeas relief does not apply to errors of state law by themselves. Estelle v. McGuire, 502 U.S. 62, 67 (1991). "[O]nly if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." Perruquet v. Briley, 390 F. 3d 505, 511 (7th Cir. 2004), citing Estelle, 502 U.S. at 67-68.

Here, Norington's claim that the state court improperly applied the Illinois Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq* (West 2004)), is beyond this court's jurisdiction. See Lambert v. Davis, 449 F. 3d 774, 778 (7th Cir. 2006). Norington asserts that the state court improperly applied the higher standard of second stage proceedings to his first-stage summary dismissal. See 725 ILCS 5/122-2.1(a)(2), 5/122-4. In order to address this claim, this court would have to determine whether the state courts applied the appropriate standard pursuant to state law. Such a determination is beyond the purview of the federal courts. "We are bound by a state court's interpretations of state law." Ben-Yisrayl v. Buss, 540 F. 3d 542, 555 (7th Cir. 2008); See also Bradshaw v. Richey, 546 U.S. 74, 76 (1999). The Illinois Appellate Court affirmed the circuit court's summary dismissal of Norington's post-conviction petition without finding any fault in the procedure. Thus, we are bound by the state court's decision on the question of whether the Illinois Post-Conviction Act's procedures were properly applied. Similarly, Norington's claim that the trial court did not properly admonish him pursuant to Illinois Supreme Court Rule 605 (c) is beyond our jurisdiction since it involves purely a question of state law.

## IV. Conclusion

Based on all of the foregoing, Norington's petition for habeas relief is denied.

DATED: October 26, 2010

SHARON JOHNSON COLEMAN

United States District Judge